### SCARBOROUGH v. ATLANTIC COAST LINE R. CO.
#### No. 5965.

United States Court of Appeals Fourth Circuit.

Argued Oct. 13, 1949.

Decided Dec. 3, 1949.

George E. Allen, Richmond, Va. (L. Cutler May, Richmond, Va., on brief), for appellant.

Collins Denny, Jr., Richmond, Va. (J. M. Townsend, Petersburg, Va., and How-

ard C. Vick, Richmond, Va., on brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Alton Scarborough, Jr., plaintiff-appellant, on March 17, 1949, filed a civil action in the District Court of the United States for the Eastern District of Virginia under the Federal Employers' Liability Act, 45 U.S.C.A. § 56, hereinafter called the Act, against the Atlantic Coast Line Railroad Company, defendant-appellee, to recover damages for personal injuries alleged to have been sustained on September 24, 1944, by plaintiff (who was then only seventeen years old) while in the employ of the defendant. Plaintiff, in his complaint, set out facts which he claimed would estop the defendant from pleading the three-year statute of limitations prescribed by the Act as a bar to his action. This provision reads:

"No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

The defendant filed a motion to dismiss "on the ground that the complaint shows on its face that this action was not commenced within three years from the day the cause of action accrued." The District Court sustained the motion and dismissed the action upon the theory that, while the principles of estoppel would apply if the ordinary remedial type of statute of limitations was involved, these principals could not be applied where (as here) the statute is of substantive type. Plaintiff has duly appealed to us.

The motion to dismiss admitted pro hac vice the allegations of the complaint. Those relevant allegations were:

"(7) That immediately following the aforesaid collision in which the plaintiff was injured, the defendant, through its duly authorized claim agent, Edwin C. Smith, proceeded to investigate said accident; and upon finding as a fact, the existence of liability on the part of the said defendant, reported the same to the plaintiff and then proceeded to negotiate with the plaintiff and his father, Alton Joseph Scarborough, Sr., for a settlement.

"(8) That the plaintiff's injuries were of such a nature that prolonged hospitalization became necessary and in order that the damages sustained by him as a result of his injuries might be more readily determined, the defendant, through its claim agent, requested the plaintiff to defer making his claim for damages and filing suit thereon until after he reached the age of twenty-one (21) years, when the extent of his injuries could be determined and the damages resulting from such injuries ascertained.

"(9) That as an inducement to the plaintiff to defer the making of his claim and the institution of suit thereon against the defendant until after he became twenty-one (21) years of age, the defendant, in consideration of such forbearance, promised the plaintiff that it would pay his claim as soon after he reached his majority as the extent of his injuries and the amount of his damages could be determined, and if, after reaching the age of twenty-one (21) years, they could not agree on a reasonable settlement of his claim the plaintiff could then go into a court of competent jurisdiction and ask the court and jury to fix his compensation—the defendant, through its said claim agent, all the while assuring the plaintiff and his father that by waiting he would lose none of his rights under the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.], since he had three (3) years after reaching the age of twenty-one (21) years within which to bring an action against the defendant.

"(10) That from time to time, for a period of several years following the date of said accident, the defendant, through its said claim agent, reiterated to the plaintiff and his father that it stood willing to pay his claim, but requested that he continue to wait until after he reached the age of twenty-one (21) years, when the extent of his injuries and the amount of his damages could be more reasonably determined —all the while continuing to assure the plaintiff that he would lose none of his

rights under the Act thereby, since he would have three (3) years after he attained the age of twenty-one (21) years within which to bring suit upon his claim for damages.

"(11) That the plaintiff's injuries were such that prolonged hospitalization and medical treatment were necessary; such hospitalization and treatment continuing for a period of several years following his said accident, during all of which time the defendant, through its said claim agent, was assuring plaintiff from time to time that he need not file any suit against the defendant, because his claim would be paid within a reasonable time after he became twenty-one (21) years of age, at which time it could tell with reasonable certainty, the extent of his injuries and the amount of his damages.

"(12) That the plaintiff reached his majority on December 28, 1947. Not hearing from the defendant within a reasonable time thereafter, he engaged counsel for the purpose of negotiating with the defendant for a settlement of his claim; that his counsel accordingly took the matter up with the defendant and were advised that the defendant denied all liability in the premises, and thereafter plaintiff's counsel so advised plaintiff. Plaintiff further avers that he is now advised that the defendant will plead the Statute of Limitations.

"(13) Plaintiff avers that he was lulled into a false sense of security by the promises, representation and assurances of the defendant, as aforesaid, that his claim would be paid as soon after he reached the age of twenty-one (21) years as the extent of his injuries and the amount of damages could be determined, and that it was not necessary for him to file suit to secure his damages, and that in the event the settlement figure arrived at by the defendant was refused, that he would still have three (3) years after reaching his majority within which to prosecute his action; that he relied upon such representations and assurances and forebore to sue, and that now to permit the defendant to deny liability solely on the ground that his action was not instituted within the three-year period of limitations would operate as a fraud upon him.

"(14) Plaintiff further avers that the aforesaid conduct of the defendant, by and through its said agent, acting within the scope of his authority, obstructed the prosecution of plaintiff's action against the defendant and that the time that such obstruction continued cannot be computed as any part within which his right of action ought to have been prosecuted, and, therefore, he now has a right to prosecute this action."

We are thus faced with the important question whether the time limitation of the Act is tolled by the deliberate fraud of the defendant, practiced on an infant, which induced the plaintiff to delay the filing of his action beyond the time limitation set out in the Act. We think the District Court erred by answering this question in the negative.

The distinctions between the two classes of statutes of limitations, the remedial and the substantive, have been frequently discussed. Thus, in 34 Am.Jur. 16, it is stated:

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, *is not a statute of limitations.* It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right." (Italics ours.)

See, also, 53 C.J.S., Limitations of Actions, § 1, p. 904; Osbourne v. United States, 2 Cir., 164 F.2d 767, 768; Damiano v. Pennsylvania Railroad Co., 3 Cir., 161 F.2d 534, 535, certiorari denied 332 U.S. 762, 68 S.Ct. 65, 92 L.Ed. 348; United States v. McCord, 233 U.S. 157, 34 S. Ct. 550, 58 L.Ed. 893; Winfree v. North-

256

ern Pacific Railway Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518; Pollard v. Bailey, 20 Wall. 520, 22 L.Ed. 376; American Railroad Co. v. Coronas, 1 Cir., 230 F. 545, L.R.A.1916E., 1095; Partee v. St. Louis & San Francisco Railroad Co., 8 Cir., 204 F. 970, 51 L.R.A.,N.S., 721; Burks Pleading and Practice (3d Ed.) 348, 349.

Probably the case most favorable to plaintiff, in spite of a dictum in the opinion that fraud does not toll the running of the limitation period, is Osbourne v. United States, supra. There it was squarely held that the limitation period in a substantive statute of limitations was extended for the period during which plaintiff was interned by Japan during World War II. Therein, Circuit Judge Frank, 164 F.2d at pages 768, 769, said:

"Appellant does not deny the force of these holdings. But he maintains that they are not applicable to his case because of the extraordinary circumstance that throughout the period when he ought to have brought suit, the courts were unavailable to him as a prisoner in the hands of the enemy. The leading case on which he relies is Hanger v. Abbott [6 Wall 532], 73 U.S. 532, 18 L.Ed. 939. There a resident of New Hampshire brought suit against a resident of Arkansas in the federal courts in Arkansas shortly after the civil war. The debt sued upon had been contracted before the war; the defendant pleaded the statute of limitations. The Supreme Court held that during the war both plaintiff's rights and remedies had been suspended, as the courts had not then been open to the parties. The Court recognized that the statute of limitations contained no express exception regarding war periods, but stated that exceptions had been made which were not in the statute.

"The Hanger case has been consistently followed in the federal courts. Its doctrine has been applied not only where the plaintiff was a citizen of the United States, but also where he was an enemy alien during a war. It had also applied where the statute of limitations was of the substantive type involved here, not the ordinary type as in the Hanger case, because the considerations for so tolling the ordinary statute apply also to the special type. State courts, facing the same problem in cases involving limitations provisions in wrongful death statutes, have held that the statute should toll for enemy aliens, despite silence on the subject in the statute itself.

"We see no reason why the Hanger doctrine should not govern here. The cases cited show there would be no doubt that a Japanese citizen employed as appellant was on the S. S. President Harrison would have been able to sue for similar injuries. It would seem the height of unreasonableness to grant such redress to one of our former enemies at the same time we denied it to a citizen who, through no fault of his own, was held prisoner by that enemy.

"Neither do we think that distinction should be made because of the type of statute of limitations involved. All statutes of limitation are based on the assumption that one with a good cause of action will not delay bringing it for an unreasonable period of time; but, when a plaintiff has been denied access to the courts, the basis of the assumption has been destroyed. Whatever the reasons for describing this type of statute of limitations as substantive rather than procedural —and we suspect the chief reason was to make the period of limitation named in the statute, rather than that of the forum, control in cases brought in state courts— we think we do the distinction no violence by holding that either type of statute will toll for one who is a prisoner in the hands of the enemy in time of war."

In Frabutt v. New York, Chicago & St. Louis Railroad Co., D.C., 84 F.Supp. 460, 464, District Judge Gourley followed the Osbourne case by holding (though here, too, was a dictum that fraud does not toll the running of the statute of limitations) in a case arising under the Federal Employers' Act that the limitation period was extended as between citizens of countries at war.

In State of Maryland, to Use of Burkhardt, v. United States, 4 Cir., 165 F.2d

869, 1 A.L.R.2d 213, our Court had before it the question of whether, in a suit for death by wrongful act brought under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq. [now §§ 1346, 2671 et seq.], there should be applied the limitation of twelve months prescribed by the Maryland Statute of Death by Wrongful Act or the limitation period set out in the Federal Tort Claims Act. In holding that the limitation set out in the Federal Tort Claims Act was controlling, Circuit Judge Parker, 165 F.2d at page 873, had this to say:

"And we think it makes no difference that the limitation applicable to the action for death by wrongful act is held under state law to be a condition on the exercise of the right rather than a limitation on the remedy. *This holding is based upon the narrow ground that the limitation is imposed by the statute creating the cause of action and is, to say the best of it, technical and legalistic reasoning, which is not followed in all the states.* Cf. State of Maryland to Use of Dunnigan v. Cobourn, 171 Md. 23, 187 A. 881, 107 A.L.R. 1045; Sharrow v. Inland Lines, 214 N.Y. 101, 108 N.E. 217, L.R.A.1915E, 1192, Ann. Cas.1916D, 1236, and cases cited in note in 67 A.L.R. 1071. In any case, however, the limitation applicable to the action for death by wrongful act is recognized as a limitation upon the right to sue; and there is no reason to think that Congress did not intend that the limitations prescribed in the Tort Claims Act itself should be observed rather than such limitations of state law. In other words, even though the limitation be regarded as a condition upon the exercise of the right, the wrongful death statute does two things: (1) it creates a cause of action for wrongful death and (2) it provides a time limitation upon the right to assert that cause of action. We think it a reasonable and necessary interpretation of the Tort Claims Act that the law of the State is to be followed with respect to the cause of action created but not with respect to the time limitation for suit upon it, since the act itself prescribes its own time limitation." (Italics ours.)

Appellant also cites to us Guy v. Stocklein Baking Co., 133 Pa.Super. 38, 1 A.2d 839; Horton v. West Penn. Power Co., 119 Pa.Super. 465, 180 A. 56; Peters v. Public Service Corporation, 132 N.J.Eq. 500, 29 A.2d 189.

Strong support for appellee's contention is found in Bement v. Grand Rapids & Indiana Railway Co., 194 Mich. 64, 160 N.W. 424, L.R.A.1917E, 322, which held that fraud does not extend the period prescribed by the Federal Employers' Liability Act. In line with the Bement case, also, is Damiano v. Pennsylvania Railroad Co., 3 Cir., 161 F.2d 534. From Circuit Judge McLaughlin's opinion in the Damiano case, 161 F.2d at page 535, we quote:

"* * * On behalf of Conrad and based on his affidavit, it is claimed that he agreed to compensation in reliance upon defendant's implicit representation that the matter fell exclusively within state law. Damiano says in his statement that he was induced to sign a Workmen's Compensation Agreement by an agent of the defendant assuring him that 'you are not signing anything bad; we have to send that into Harrisburg and approve your compensation.'

"As the Supreme Court held in Central Vermont R. v. White, 1915, 238 U.S. 507, 511, 35 S.Ct. 865, 867, 59 L.Ed. 1433, Ann. Cas.1916B, 252. Section 6 of the Federal Employers' Liability Act not only 'bars the remedy, but destroys the liability' after the lapse of time. It is a 'special statutory limitation qualifying a given right.' 19 Am. & Eng.Enc., 2nd Ed. 150.

* * * * * *

Such statutes cannot be tolled, after the manner of statutes of limitation, even for fraud or concealment by the defendant which prevent the plaintiff from bringing the action within time. Pollen v. Ford Instrument Co., 2 Cir., 1940, 108 F.2d 762, 763; United States ex rel. Nitkey v. Dawes, 7 Cir., 1945, 151 F.2d 639, 644, certiorari denied 1946, 327 U.S. 788, 66 S.Ct. 808 [90 L.Ed. 1015]. Section 6 of the Act in question, since its enactment in slightly different form, has been construed to be in this category. Central Vermont R. Co. v. White (supra); Flynn

258

v. New York, etc., R., 1931, 283 U.S. 53, 56, 51 S.Ct. 357, 75 L.Ed. 837, 72 A.L.R. 1311. Being in this category it cannot be tolled by fraud or concealment. Bell v. Wabash R. Co., 8 Cir., 1932, 58 F.2d 569, 572."

And, see, also Flynn v. New York, New Haven & Hartford Railroad Co., 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837, 72 A.L.R. 1311; United States v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; Winfree v. Northern Pacific Railway Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518; Carpenter v. Erie Railroad Co., 3 Cir., 132 F.2d 362, certiorari denied 318 U.S. 788, 63 S. Ct. 983, 87 L.Ed. 1155; Wabash Railway Co. v. Bridal, 8 Cir., 94 F.2d 117, certiorari denied 305 U.S. 602, 59 S.Ct. 63, 83 L.Ed. 382; Bell v. Wabash Railway Co., 8 Cir., 58 F.2d 596; Rademaker v. E. D. Flynn Export Co., 5 Cir., 17 F.2d 15; American Railroad Co. v. Coronas, 1 Cir., 230 F. 545, L.R.A.1916E., 1095; Partee v. St. Louis & San Francisco Railroad Co., 204 F. 970, 51 L.R.A.,N.S., 721; Wilson v. Missouri Pacific Railroad Co., D.C., 58 F. Supp. 844; Morrison v. Baltimore & Ohio Railroad Co., 40 App.Cas.D.C. 391, Ann.Cas. 1914C, 1026; Gauthier v. Atchison, Topeka & Santa Fe Railway Co., 176 Wis. 245, 186 N.W. 619; Omin v. Baltimore & Ohio Southwestern Railway Co., 8 Ohio App. 161.

We have endeavored to set out fairly the law with which we are here concerned, as it has been stated in the cases decided by the courts. If dicta be considered, the weight of such primary authority appears to favor the view expressed by the District Court. In none of these cases, does the opinion fairly face, with an adequate discussion of the question on principle, the precise problem now before us. The cases cited as favoring the appellee based their holdings on the narrow technical distinction between the two types of statutes of limitations and then state baldly that, by virtue of this legalistic distinction, fraud does not toll the running of a statute of limitations which is of the substantive type. Under these circumstances, we do not consider ourselves bound by this seeming weight of judicial authority. We, accordingly, feel free to decide this case on principle.

Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers. And unless the statute so requires with crystal clarity, it should not be so applied as to negative broad principles well settled in our law by a long series of decisions. And just such a principle was set out by Vice Chancellor Leaming, in Howard v. West Jersey & Southern Railroad Co., 102 N.J.Eq. 517, 141 A. 755:

"One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought."

Vice Chancellor Leaming thus applies to statutes of limitations the ancient and beneficent doctrine of estoppel. And nothing is better settled, as a general principle, than the rule that, wherever found and in whatever guise, fraud will, in some way or manner, never be permitted to give an inequitable advantage to the one who has consciously perpetrated the fraud.

The Act contains this provision:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void". 45 U.S.C.A. § 55.

For a broad interpretation of this provision, see Duncan v. Thompson, 315 U.S. 1, 6, 62 S.Ct. 422, 424, 86 L.Ed. 575, in which the Supreme Court went very far to stamp out "ingenious evasions of the statutory responsibilities". If these doctrines have any virtue, they must apply in the situation set out by the plaintiff's complaint herein, where a wily claim agent sought by a deliberate fraud to take away the legal rights of an infant, who acted without the aid of independent advice.

The decisions in the Osbourne and Frabutt cases, supra, show clearly that there is a chink in the supposedly impregnable armor of the substantive time limitation of the Act. If, as those cases decided, there is one exception (war), surely the infinite variety of human experience will disclose others. Those cases demonstrate that a claim under the Act is not a legal child born with a life span of three years, whose life must then expire, absolutely, for all purposes and under all circumstances. True it is that war physically prevents access to the courts, however anxious a litigant may be to bring suit. Fraud, however, as in the instant case, may be equally as effective in preventing one from seasonably suing on his claim; and, if permitted to succeed, it affords a continuous temptation thus to defeat the primary purposes for which Congress passed the Act.

Judge Frank in the Osbourne case and Judge Parker in the Burkhardt case, supra, have shown that the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words.

■ It has often been said that a primary purpose of statutes of limitations in general has been the prevention of fraud. It is freely conceded by appellee here that fraud will toll the running of the so-called remedial statute of limitations. We cannot see a distinction and a difference, so clear and so real, between the two classes of statutes of limitations— the remedial and the substantive—as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). The ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations.

■ Here the proper approach is not technical and conceptualistic. Rather, we think should it be realistic and humane. The spirit, not the letter, should control. Qui haeret in litteris, haeret in cortice.

■ For the reasons above stated, we think the fraud set out in the plaintiff's complaint herein would operate to extend the period within which an action must be brought on a claim arising under the Act. The District Court erred in holding otherwise. Accordingly, the judgment of the District Court is reversed and the case is remanded to that court with instructions to grant a new trial in accordance with this opinion.

Reversed and Remanded.