## FRAVEL v. PENNSYLVANIA R. CO.
### Civ. No. 5399.

United States District Court
D. Maryland.
March 31, 1952.

Maurice J. Pressman, of Baltimore, Md., and Richter, Lord & Farage, of Philadelphia, Pa., for plaintiff.

Hall Hammond and Clayton W. Daneker, of Baltimore, Md., for defendant.

COLEMAN, Chief Judge.

This is a personal injury suit brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60 inclusive, and the Safety Appliance Acts, 45 U.S.C.A. §§ 1–43 inclusive. It is before the Court on a motion of the defendant to dismiss the action.

The material facts as alleged by the complaint which, on the motion to dismiss, are to be treated as admitted by defendant, are as follows: On July 6, 1940, about 12:45 a. m., while the plaintiff was employed by the defendant as a freight brakeman, on its Cumberland Valley, Pennsylvania, branch, and while acting as a flagman on a train which was then waiting at a switch, a light engine operated by defendant on a west-

bound track crashed into the train on which the plaintiff was working, as a result of which the plaintiff was thrown about with great force, striking his back on the floor. During the two weeks following the accident, the plaintiff was examined on several occasions at the Chambersburg, Pennsylvania, Hospital, by doctors for the defendant, who took x-rays of his back at the defendant's direction, and told him that he had no serious injuries. Approximately two weeks after the accident, the plaintiff was informed by the defendant's claim agent that he had conferred with the defendant's doctors and that the medical information available to the railroad was to the effect that there was nothing wrong with the plaintiff; that he would have nothing to fear as to the after-effects of the accident; that if any injuries should show up later as a result of the accident, the defendant would compensate him for any damages so sustained, and that if the parties were unable to agree on the amount of the damages, he could bring suit against the defendant at any time. In reliance upon these statements and representations of the defendant's doctors and the defendant's claim agent, the plaintiff executed a release to the defendant for which he obtained no consideration, except payment of $50 as his wages for the week that he had lost from work as a result of the accident.

Plaintiff's back continued to trouble him and he continued to experience severe pain in the region of his injury. From time to time he consulted the defendant's doctors regarding this, but he was always informed that he had no serious injury and that his pain would abate with time. The various railroad doctors that the plaintiff consulted also advised him, as time went on, that his pain was the result of a rheumatic condition. Finally, on February 17, 1949, more than eight and a half years after the accident, the plaintiff consulted a physician not connected with the railroad, who diagnosed his back condition as a herniation of the 4th lumbar intervertebral disc, with compression of the lumbar nerve roots, and informed him that this injury would necessitate an operation for the removal of the disc and fusion of the spine, and that in any

event, his injury was of a serious and permanent nature. An operation was performed which confirmed this diagnosis. On June 29, 1951, almost eleven years after the accident, the plaintiff commenced this action, claiming damages in the amount of $62,500. The defendant has moved to dismiss it on three grounds: (1) that the alleged cause of action was not commenced within three years from the day it accrued as provided in Section 6 of the Federal Employers' Liability Act, as amended, 45 U.S. C.A. § 56; (2) that the release which plaintiff executed after the accident is valid and constitutes a complete discharge of defendant from all further liability to plaintiff in connection with the accident; and (3) that the plaintiff is barred by laches from prosecuting this action.

Taking up these grounds alleged by the defendant for dismissal of the action in the order just stated, Section 6, as amended, of the Employers' Liability Act, 45 U.S.C.A. § 56, provides that "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." In Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 15 A.L.R.2d 491, a decision of the Court of Appeals of this, the Fourth Circuit, it was held on a motion by defendant to dismiss the action, that this three year limitation was tolled by the alleged deliberate fraud of a claim agent of the defendant railroad in inducing a seventeen year old boy to delay filing suit beyond the three year period of limitation, by informing him and his father that he would have three years after reaching the age of twenty-one within which to bring the action. The Court said, 178 F.2d 253, at page 255: "We are thus faced with the important question whether the time limitation of the Act is tolled by the deliberate fraud of the defendant, practiced on an infant, which induced the plaintiff to delay the filing of his action beyond the time limitation set out in the Act. We think the District Court erred by answering this question in the negative." Then the Court, after analyzing the distinctions between the two classes of statutes of limitations, i. e., the remedial and the substantive, said, 178 F.2d 258–259:

"We have endeavored to set out fairly the law with which we are here concerned, as it has been stated in the cases decided by the courts. If dicta be considered, the weight of such primary authority appears to favor the view expressed by the District Court. In none of these cases, does the opinion fairly face, with an adequate discussion of the question on principle, the precise problem now before us. The cases cited as favoring the appellee based their holdings on the narrow technical distinction between the two types of statutes of limitations and then state baldly that, by virtue of this legalistic distinction, fraud does not toll the running of a statute of limitations which is of the substantive type. Under these circumstances, we do not consider ourselves bound by this seeming weight of judicial authority. We, accordingly, feel free to decide this case on principle.

"Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers. And unless the statute so requires with crystal clarity, it should not be so applied as to negative broad principles well settled in our law by a long series of decisions.

\* \* \* \* \* \*

"The Act contains this provision:

"'Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void'. \* \* \*

"For a broad interpretation of this provision, see Duncan v. Thompson, 315 U.S. 1, 6, 62 S.Ct. 422, 424, 86 L.Ed. 575, in which the Supreme Court went very far to stamp out 'ingenious evasions of the statutory responsibilities'. If these doctrines have any virtue, they must apply in the situation set out by the plaintiff's complaint herein, where a wily claim agent sought by a deliberate fraud to take away the legal rights of an infant, who acted without the aid of independent advice.

"The decisions in the Osbourne [Osbourne v. United States, 2 Cir., 164 F.2d 767] and Frabutt [Frabutt v. New York, C. & St. L.

R. Co., D.C., 84 F.Supp. 460] cases, supra, show clearly that there is a chink in the supposedly impregnable armor of the substantive time limitation of the Act. If, as those cases decided, there is one exception (war), surely the infinite variety of human experience will disclose others. Those cases demonstrate that a claim under the Act is not a legal child born with a life span of three years, whose life must then expire, absolutely, for all purposes and under all circumstances. True it is that war physically prevents access to the courts, however anxious a litigant may be to bring suit. Fraud, however, as in the instant case, may be equally as effective in preventing one from seasonably suing on his claim; and, if permitted to succeed, it affords a continuous temptation thus to defeat the primary purposes for which Congress passed the Act.

"Judge Frank in the Osbourne case and Judge Parker in the Burkhardt case [State of Maryland, to use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 1 A.L.R.2d 213], supra, have shown that the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words.

"It has often been said that a primary purpose of statutes of limitations in general has been the prevention of fraud. It is freely conceded by appellee here that fraud will toll the running of the so-called remedial statute of limitations. We cannot see a distinction and a difference, so clear and so real, between the two classes of statutes of limitations—the remedial and the substantive—as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). The ancient maxim that no one should profit by his own conscious

wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations.

"Here the proper approach is not technical and conceptualistic. Rather, we think should it be realistic and humane. The spirit, not the letter, should control."

The judgment of the District Court having thus been reversed and the case remanded for a new trial, and certiorari having been denied, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343, on this second trial the case was allowed to go to the jury on both the issue of the tolling of the three year statute of limitations and the merits of plaintiff's claim. Special issues were submitted to the jury. These included the question whether, if the jury should find that defendant's claim agent, with fraudulent intent and reckless disregard of plaintiff's rights, represented to plaintiff or his father that the railroad company recognized its liability for the injury to plaintiff, and that the plaintiff had until three years after he became twenty-one years old to bring his suit, the plaintiff did in fact rely upon such representations of the claim agent when plaintiff delayed bringing his suit until more than three years after he was injured; and if he did rely thereon, did he and his father act as ordinary prudent persons in so doing? The jury returned a verdict for the defendant, upon direction of the Court after the jury had reported its answer to the special issues presented to it for decision, among these answers being a negative one to the question above stated, whether plaintiff and his father did "act as ordinary prudent persons" in relying upon Smith's, the claim agent's statements. As to this, the appellate court said, 4 Cir., 190 F.2d 935, at page 939: "We think it was clearly erroneous to submit to the jury, * * * whether plaintiff and his father did 'act as ordinary prudent persons' in relying upon Smith's statements." The Court further said, 190 F.2d 935, at pages 940–941: "The evidence thus leaves no doubt of the fact that Smith, the Claim Agent, told plaintiff that he had three years after reaching his majority to institute suit. It seems equally clear that this statement was based on information received from Division Counsel. While the fact that Smith had received the information in this way was probably thought by the jury sufficient to exculpate him of intentional fraud, it emphasizes the importance of the rule which grants relief against misrepresentations of this sort relied upon by the persons to whom they are made, whether made with intent to defraud or not. When the Company's Claim Agent made such representation relying on what had been told him by his Division Counsel, and claimant relied upon the statement, the Company should not be allowed to escape responsibility therefor on the ground that the agent had no fraudulent intent. High minded men hesitate to take advantage of the mistakes of others; certainly no one should be allowed to take advantage of his own mistake to escape responsibility for a statement of his agent upon which another has placed reliance."

The judgment of the District Court was accordingly again reversed, and the case was again remanded with directions to grant another trial.

■ Counsel for plaintiff in the case now before us relies strongly upon the two decisions of the Court of Appeals of this Circuit in the Scarborough case, which we have just analyzed. On the other hand, counsel for defendant claims that the Scarborough decisions are not controlling here because they rest upon materially different facts, i. e., that there was deliberate fraud practised by representatives of the railroad upon a minor. It is true there exist factual distinctions. The character and degree of the misrepresentation were different, and its effect upon the mind of the plaintiff in the Scarborough case, because of his youth, might very well have been greater. But, as we construe the plain language of the Court of Appeals in the Scarborough decisions, this is not conclusive. The Court says in the part of its second opinion which we have above quoted that "the rule * * * *grants relief against misrepresentations of this sort relied upon by the persons to whom they are made, whether made with intent to defraud or not.*" 190 F.2d 935, at page 940. (Emphasis supplied.) Thus, it is not sufficient to say, as defendant's counsel

does, that here "the most favorable light that the plaintiff can throw on the situation is that there was a mutual mistake of fact as to the plaintiff's condition," because the complaint alleges "that a number of doctors told the plaintiff that his condition was rheumatic," not traumatic.

We are therefore satisfied that the rule laid down by the Court of Appeals in the Scarborough case requires that the defendant's motion to dismiss the action in the present case must be denied. Whatever is said contrary to the rule of the Scarborough case, in decisions in other Circuits, such as Damiano v. Pennsylvania R. Co., 3 Cir., 161 F.2d 534, certiorari denied 332 U. S. 762, 68 S.Ct. 65, 92 L.Ed. 348, and Frabutt v. New York, Chicago & St. Louis R. Co., D.C., 84 F.Supp. 460, upon which counsel for defendant rely, cannot control us here. We have also been referred by counsel for defendant to the quite recent decision of the Supreme Court in Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, as supporting the necessity for placing a strictly literal, inflexible interpretation upon the three-year limitation in the statute. In that case it was held that under Section 13 (a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S.C.A. § 913 (a), the one-year period of limitation on the filing of claims for compensation for disability begins to run, as that Section provides, on the date of the *injury*, and not on some subsequent date when *disability* occurs. We fail to see that this decision has any relation to the question in the present case. The Pillsbury case merely involved the interpretation to be given to a particular statutory use of the word "injury", i. e., should it be construed literally to mean "injury", or to mean "disability", when it was only the latter that was compensable. No question of misrepresentation was involved in the case.

In view of our conclusion on the question of limitations, little need be said with respect to defendant's second ground on which its motion to dismiss is based, namely, that the release which plaintiff executed after the accident is valid and constitutes a complete discharge of defendant from all further liability to plaintiff. The facts that are sufficient to toll the statute of limitations are, for the same basic reason,— whether there be misrepresentation, intentional or unintentional, in connection with the settlement, or merely a settlement made without regard to an undisclosed physical condition,—sufficient to invalidate the settlement. See Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 183 F.2d 548, 21 A.L.R.2d 266; Graham v. Atchison T. & S. F. Ry. Co., 9 Cir., 176 F.2d 819.

Finally, as to defendant's third ground for its motion to dismiss the action, namely, that plaintiff is barred by laches, it is clear that there is no basis to support this contention if there be no merit in the defendant's two other contentions.

For the aforegoing reasons, defendant's motion to dismiss the present action must be denied.