FLEMING, J.
 

 Uninsured motorist coverage.
 

 In March 1962, in Miami Beach, Florida, Samuel and Ida Diskin, California residents, received personal injuries when the taxicab in which they were riding collided with a fire hydrant. The taxicab operator was covered by liability insurance issued by Preferred Insurance Company of Grand Rapids, Michigan, but the company became insolvent in May 1963, a fact of which the Diskins learned in January 1964. The statute of limitation for personal injuries under Florida law is four years rather than one year as in California, and up to
 
 *500
 
 that point 'the Disking had not filed suit against the taxicab operator to recover damages for their injuries. Nor did they do so later. Instead, in March 1964 the Diskins instituted arbitration proceedings in California against Firemen's Insurance, their own insurer, to secure damages under the uninsured motorist coverage of their own policy. Firemen’s Insurance then brought suit against the Diskins for declaratory relief and secured a permanent injunction against arbitration on two grounds—that no uninsured motorist within the meaning of the statute had been involved in the accident, and that the Diskins were barred from recovery by subsection (h) of 11580.2 of the Insurance Code because they had failed to initiate proceedings within one year of the accident. The Diskins appeal.
 

 I
 

 We think erroneous the ruling that the taxicab operator did not qualify as an uninsured motorist under Insurance Code, section 11580.2, and we follow the decision in
 
 Katz
 
 v.
 
 American Motorist Ins. Co.,
 
 244 Cal.App.2d 886 [53 Cal.Rptr. 669], which declared a motorist whose liability insurance had been in effect at the time of the accident uninsured within the meaning of the statute when his insurer thereafter became insolvent.
 

 II
 

 Does failure to initiate proceedings within one year of the date of the accident bar the Diskins from recovery on their uninsured motorist coverage, even though they did not have an actionable claim against their own insurer until Preferred Insurance became insolvent more than one year after the accident? The Diskins filed their demand for arbitration two years after the accident, a demand which Firemen’s Insurance contends was too late because the Diskins were required to initiate proceedings within one year of the accident. Subsection (h) of section 11580.2 reads:
 
 “No cause of action shall accrue
 
 to the insured under any policy or endorsement provision issued pursuant to this section unless
 
 within
 
 one year from the date of the accident:
 

 “(1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction, or
 

 “ (2) Agreement as to the amount due under the policy has been concluded, or
 

 “(3) The insured has formally instituted arbitration proceeding.” (Italics added.)
 

 
 *501
 
 Firemen’s Insurance argues that the obligation of the Dis-kins to file suit or institute arbitration proceedings within one year of the date of the accident was absolute and that the statute allows no exceptions; further, that the Diskins could have preserved their rights by filing suit in a court of competent jurisdiction, but they neither filed suit nor tendered a valid excuse for their failure to do so.
 

 The Diskins argue they didn’t file a claim against Firemen’s Insurance within one year because during that time they had no claim to file; that their duty to institute arbitration proceedings within one year did not arise until their right to do so came into existence; that subsection (h) is a statute of limitation, which does not begin to run until a cause of action has accrued. (Code Civ. Proc., § 312.) In short the Diskins contend that since their uninsured motorist claim did not come into existence until Preferred Insurance became insolvent, they were not required to initiate arbitration proceedings until one year after the insolvency.
 

 The problem before us is one of statutory interpretation. On its face subsection 11580.2, subdivision (h) makes the performance of one of three alternative acts within a certain time prerequisite to the existence of a cause of action against the insurer. But is failure to satisfy an absolute prerequisite to a statutory right sometimes excused? Specifically, is the requirement that a claim or suit be filed within one year of the date of an accident subject by implication to a general exception that a claim need not be filed until a cause of action has accrued ?
 

 We start with a brief analysis of the statute. Insurance Code, section 11580.2, the uninsured motorist statute, requires all motor vehicle liability insurance policies to cover the insured within statutory amounts for sums which the insured shall be legally entitled to recover as damages for personal injuries from the operator of an uninsured motor vehicle. The insured may establish in arbitration proceedings his right to legal recovery against an uninsured motorist and the amount of his damages. An insurer paying a claim under its uninsured motorist coverage becomes subrogated to the rights of the insured against the uninsured motorist. The effect of the statute is to guarantee to an insured motorist the minimum financial responsibility of another motorist who has wrongfully inflicted personal injuries on him. It is readily apparent that the liability of the insurer (1) is secondary and deriva
 
 *502
 
 tive, and (2) is contingent on the insured’s right to legal recovery against the tortfeasor.
 

 In determining the reach of the statute and the extent to which laws of general application are encompassed within it, we turn first to legal doctrine, which in this field has passed through several formulations. Initially, the courts viewed the problem as one of differentiation between right and remedy, and they construed statutory provisions declaring that a cause of action did not arise unless specific remedial steps had been taken, as conditions of the right which had to be satisfied before the remedy came into being. “Time has been made the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right.”
 
 (The Harrisburg,
 
 (1886) 119 U.S. 199, 214 [30 L.Ed. 358, 362, 7 S.Ct. 140].)
 

 But analysis in terms of right and remedy did not prove completely satisfactory in actual use and came under heavy attack in recent years (63 Harv.L.Rev. 1177, 1186-1187;
 
 Myers
 
 v.
 
 Stevenson,
 
 125 Cal.App.2d 399, 404-405 [270 P.2d 885]), and there came into vogue the terminology of condition and limitation. As summarized in 34 American Jurisprudence, Limitation of Actions, section 7: “A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. . . . The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. Whether an enactment is of this nature, or whether it is a statute of limitations, should be determined from a proper construction of its terms. ’ ’
 

 But this formulation likewise proved not wholly satisfactory. For example, a recent case referred to subsection (h) as “in effect, a statute of limitations”
 
 (Aetna Cas. & Surety Co.
 
 v.
 
 Superior Court,
 
 233 Cal.App.2d 333, 340 [43 Cal.Rptr. 476]), but also said, “It appears to be the legislative intent
 
 *503
 
 that compliance with subdivision (h) is a condition precedent to . . . the enforcement of any . . . right under the policy. ’ ’ (P. 339.)
 

 Still later we find a line of differentiation drawn between substantive statutes of limitation and procedural statutes of limitation.
 
 (Estate of Caravas,
 
 40 Cal.2d 33 [250 P.2d 593] ;
 
 Myers
 
 v.
 
 Stevenson,
 
 125 Cal.App.2d 399 [270 P.2d 885].) This distinction, too, possessed all the defects of circular reasoning, and served merely to conceal the fact that the initial premise dictated the final conclusion. As the court said in
 
 Scarborough
 
 v.
 
 Atlantic Coast Line R.R. Co.,
 
 178 F.2d 253, 259 [15 A.L.R.2d 491] : . . the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words. ’ ’
 

 Since none of these formulations proved generally capable of doing the desired job of separating unworthy claims from meritorious ones, no consistent theory or universal rule has been developed. Yet in the mass of specific decisions construing statutes containing absolute prerequisites to claims, we find sufficient illumination to carry us beyond the unenlightening dichotomies of right-remedy, statute law-common law, substance-procedure, and condition-limitation, into a useful principle. Some consideration of the eases will help develop the point.
 

 In
 
 Estate of Caravas,
 
 40 Cal.2d 33 [250 P.2d 593], the court dealt with the requirement of section 1026 of the Probate Code that a nonresident alien appear and demand property within five years from the time of his succession. Caravas died intestate in 1941. His mother, a resident of Greece, petitioned for his property in 1947, and attributed her failure to demand the property earlier to the disabilities imposed on her bv the German occupation of Greece from 1941 to 1944. Because of the absolute prohibition under the Trading with the Enemy Act (50 USCA, Appendix, § 2) against petitioner’s use of the courts, the court excluded the period of the German occupation from the five-year period of section 1026, observing: “. . . whether a particular statute of limitation is viewed as substantive or procedural, the consequences of a
 
 *504
 
 failure to commence legal proceedings within the specified time are the same insofar as the claimant is concerned, and, accordingly, the same considerations that lead to the conclusion that a procedural statute is tolled by the fact that the claimant is denied access to the courts similarly lead to the conclusion that the time specified in a substantive statute of limitation must likewise be extended.” (P. 42.) The same result was achieved in
 
 Osbourne
 
 v.
 
 United States,
 
 164 F.2d 767, where the court held that a merchant seaman’s status during World War II as an internee of the Japanese excused his failure to file suit under the Jones and Suits in Admiralty Acts within the periods of time specified by the statutes.
 

 So, too, fraudulent concealment of a cause of action removes all opportunity to file suit and hence excuses a failure to sue within the statutory period.
 
 (Farrell
 
 v.
 
 County of Placer,
 
 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323]);
 
 Westinghouse Elec. Corp.
 
 v.
 
 Pacific Gas & Elec. Co.,
 
 326 F.2d 575 (9th Cir. 1964);
 
 Holmberg
 
 v.
 
 Armbrecht,
 
 327 U.S. 392, 397 [90 L.Ed. 743, 748, 66 S.Ct. 582, 162 A.L.R. 719].)
 

 On the other hand, if a claimant could have protected his interest by filing his claim and did not do so, then the strict requirements of conditions precedent to the perfection of a claim have generally been enforced. In
 
 Artukovich
 
 v.
 
 Astendorf,
 
 21 Cal.2d 329 [131 P.2d 831], a case holding applicable to a minor the then general requirement that a claim against a county be filed within one year, the court pointed out: ‘ ‘ But under the statute before us, the claim of the minor plaintiff could have been presented at any time within one year and could have been presented by a parent or guardian.
 
 (Kelso
 
 v.
 
 Board of Education,
 
 42 Cal.App.2d 415 [109 P.2d 29].) Furthermore, the minor plaintiff here was represented by a guardian, who in turn was represented by an attorney, in ample time for compliance as this action was brought within eleven months after the happening of the accident. Therefore, the argument of impossibility of compliance could not have any force here.” (P. 335.) This ruling has been followed in the uninsured motorist statute itself in the rejection of late claims for arbitration filed on behalf of minors.
 
 (State Farm etc. Ins. Co.
 
 v.
 
 Superior Court,
 
 232 Cal.App.2d 808 [43 Cal.Rptr. 209] ;
 
 Pacific Indem. Co.
 
 v.
 
 Superior Court,
 
 246 Cal.App.2d 63 [54 Cal.Rptr. 470]
 
 ; Republic Indem. Co.
 
 v.
 
 Barn Furniture Mart, Inc.
 
 248 Cal.App.2d 517 [56 Cal.Rptr. 609].)
 

 We are now in position to formulate our principle: if at some point during the statutory period an opportunity to
 
 *505
 
 safeguard the claim existed, the absolute command of the statute will normally be followed. The negative of this principle appears in
 
 Myers
 
 v.
 
 Stevenson,
 
 125 Cal.App.2d 399, 405 [270 P.2d 885] : . . where actual or practical access to the courts is prevented the distinction between so-called substantive and procedural statutes of limitation may be disregarded.”
 

 The principle of access is a helpful guidepost but it is no more than that, and to decide specific eases a court must still act inductively on each statute. In this process a court must analyze the objectives, structure, and methods of the particular statutory scheme before it and then determine whether noncompliance with a statutory prerequisite to suit bars the claim, or whether the particular excuse offered, for example, minority or lack of access to the courts, may condone nonperformance of the condition. For each statute the court in effect answers these questions: Does the new law incorporate within itself well-enunciated judicial declarations of long standing? Does an unqualified prerequisite to suit exclude all such declarations or only some of them? If all are not excluded, which ones apply to a given situation? (See
 
 Westinghouse Elec. Corp.
 
 v.
 
 Pacific Gas & Elec. Co.,
 
 326 F.2d 575, 579.)
 

 We now return to the uninsured motorist statute, whose basic objective is to make every tortfeasor on the highway capable of responding in damages for personal injuries to an insured motorist. Clearly, the statute is an adjunct to the right to recover damages for personal injuries, actions for which must normally be filed in California within one year of the date of the accident. (Code Civ. Proc., § 340.) Were we to extend beyond one year the financial responsibility of a person who may be derivatively liable for the fault of another we would create a supplemental liability of greater duration than the original liability, thereby holding the person secondarily responsible to a longer period of accountability than the person primarily responsible. If we applied appellants’ argument to a California accident involving a motorist subsequently determined to be uninsured, we would be allowing the insured to institute a claim at a time when suit against the original tortfeasor was barred, a procedure which would nullify the insurer’s right of subrogation against the tortfeasor. The language of the statute makes it highly improbable that the Legislature intended such a result. We think, rather, that the Legislature intended to assimilate and attach the uninsured motorist liability of the insurer to the original tort liability of the motorist tortfeasor as closely as possible. California law
 
 *506
 
 now provides dual protection for an insured motorist: he can sue a motorist tortfeasor within one year, whether the tortfeasor is insured or uninsured; or he can institute arbitration proceedings against his own insurer within one year if the tortfeasor is uninsured. If the insured motorist files a suit against the tortfeasor in a court of competent jurisdiction within one year, he is fully assured of a financially responsible defendant.
 

 In the case at bench the opportunity to satisfy the requirement of the statute was open to appellants. While the Diskins could not have instituted arbitration proceedings against their own insurer before the insolvency of Preferred Insurance, they could have fully protected their contingent claim against their own insurer by filing suit against the motorist at fault any time up to March 1963. Since they failed to do so, their rights under the statute against their own insurer expired. Subsequent events in May 1963 or March 1964 could not operate retroactively to bring to life a claim which they had never taken steps to protect. The time restriction on claims here is not one which permits a tortfeasor or a defaulting obligor to escape his liabilities or one which allows a wrongdoer to take advantage of his own wrong.
 
 (Glus
 
 v.
 
 Brooklyn Eastern Dist. Terminal,
 
 359 U.S. 231 [3 L.Ed.2d 770, 79 S.Ct. 760] ;
 
 Scarborough
 
 v.
 
 Atlantic Coast Line R.R. Co.,
 
 178 F.2d 253, 259 [15 A.L.R.2d 491].) Rather it is one which limits the derivative liability imposed by statute on insurers in California.
 

 But appellants argue that because the accident occurred in Florida, which has a four-year limitation period for suits for personal injuries, subrogation rights would still have been available to the insurer if appellants’ claim had been recognized as timely, and the liability of the primary and secondary obligors would have remained coterminous. Using this argument appellants contend in effect that the Florida period of limitation should control. But in so reasoning they fail to take into account the fact that they are seeking to enforce a California right created by California law in a forum which operates under California procedure. Not only are conditions of a right governed by the statute which creates the right, in this case a California statute, but in accordance with the usual conflict-of-law rule periods of limitation are matters of procedure controlled by the law of the forum state, also California. Since appellants claim pursuant to a California right in a California forum, both substantively and
 
 *507
 
 proeedurally, they are bound by California law—which has provided the same one-year period for filing suit against the tortfeasor as for instituting claim against an insurer.
 

 The history of section 11580.2 further supports this construction. When the uninsured motorist law was originally adopted in 1959 it did not contain a terminal date for the initiation of claims. Thereafter, it was strenuously argued that claims under it should be governed by the four-year limitation period applicable to written contracts rather than the one-year provision applicable to personal injury torts. (See 48 Cal.L.Rev. 531-532; 36 State Bar J. 205.) The argument was settled by the Legislature in 1961 with the addition to the statute of subsection (h), which clearly assimilated liability under the uninsured motorist coverage to the one-year period for personal injuries.
 

 In final support of their position the Diskins offer two arguments of a formal nature: (1) until Preferred Insurance became insolvent there was no
 
 uninsured
 
 motorist in sight, hence the opportunity to satisfy the statute by filing suit against an
 
 uninsured
 
 motorist did not exist; and (2) it is a legal impossibility for a statute of limitation to run before the cause of action accrues.
 

 The claim that no uninsured motorist was in existence disregards the substance of the transaction. The claimed wrongdoer, who may or may not have been properly insured, was in existence and liable to suit. In claiming that no uninsured motorist was in existence at the time of the accident the Diskins have adopted as their own the very argument of the insurer which they so vigorously opposed under point I. We decline to accept the argument on behalf of the insured for the same reasons we decline to accept it on behalf of the insurer.
 
 (Katz
 
 v.
 
 American Motorist Ins. Co.,
 
 244 Cal.App.2d 886 [53 Cal.Rptr. 669].) To protect their remedies under California law appellants should have filed suit against the tortfeasor within one year and safeguarded for later determination the insurance status of the claimed wrongdoer.
 

 Appellants’ remaining contention, that a statute of limitation cannot run until the cause of action accrues, while representing normal procedure, does not fully state the law. Code of Civil Procedure, section 312, recognizes exceptions to the general rule when it declares that civil actions can only be commenced after the cause of action has accrued, unless a different limitation is prescribed by statute. The requirement that steps be taken to perfect contingent claims has long been
 
 *508
 
 recognized and enforced in appropriate instances.
 
 (Richardson
 
 v.
 
 Craig,
 
 11 Cal.2d 131 [77 P.2d 1077].) As summarized by Traynor, J., dissenting in
 
 State of Ohio
 
 v.
 
 Porter,
 
 21 Cal. 2d 45, 52-53 [129 P.2d 691, 143 A.L.R. 1432]: “The three-year period commences to run from the date the liability is created, irrespective of when the cause of action accrues, and the action might be barred thereunder before any right to sue accrues.
 
 (Hunt
 
 v.
 
 Ward,
 
 99 Cal. 612 [34 P. 335, 37 Am.St.Rep. 87]; see 7 Cal.L.Rev. 346.) ” Without belaboring the point we merely call attention to the well-known rule that a statute of limitation may run on a cause of action from the date of a tort or from the date of a breach of contract, even though the occurrence of any damage is not ascertained until a later time. (31 Cal.Jur.2d, Limitation of Actions, § 33;
 
 Collins
 
 v.
 
 County of Los Angeles,
 
 241 Cal.App.2d 451 [50 Cal.Rptr. 586].) To protect their California remedies under their policy appellants were obliged to conform to required California procedures.
 

 We are now in a position to answer the specific question in the case: Does delayed accrual of a cause of action against their insurer excuse the Diskins from filing suit or initiating proceedings within one year of the accident? We conclude that it does not, because at all times within one year of the accident the Diskins were free to file suit in a court of competent jurisdiction against the claimed tortfeasor. In failing to do so, they failed to acquire a claim against their own insurer under Insurance Code, section 11580.2.
 

 The judgment is affirmed.
 

 Roth, P. J., and Herndon, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied January 17,1968.