[Civ. No. 12782. Second Dist., Div. Three. June 23, 1942.]

THE PEOPLE, Plaintiff and Appellant, v. ERNEST A. GRANT, Respondent; COUNTY OF SAN LUIS OBISPO et al., Cross-Defendants and Appellants.

Earl Warren, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

M. R. Van Wormer for Respondent.

SCHAUER, P. J.—In the month of December, 1937, the sheriff of San Luis Obispo County seized certain slot machines which admittedly were being operated by the defendant contrary to the law of this state. The sum of $404.66 in coins was taken from such machines and deposited with the county auditor. Apparently the slot machines were destroyed, but for more than twenty-two months no action seeking forfeiture of the money was commenced. Finally, on November 1, 1939, this action was filed. In the complaint plaintiff set forth the above recited facts relative to the ownership and

operation of the slot machines, their seizure and the deposit of the money, and asked for an attachment against, and declaration of forfeiture of, the deposited money pursuant to the provisions of section 325 of the Penal Code (hereinafter quoted). On November 3, 1939, defendant made written demand for the return of the money and thereafter filed a cross-complaint, alleging, among other things, that such money was his property and that it was being wrongfully detained. His answer to the complaint pleaded that plaintiff's action was barred by the provisions of subdivision 2 of section 340 of the Code of Civil Procedure, which, read with section 312 of the same code imposes a limitation of one year on "An action upon a statute . . . for a forfeiture or penalty to the people of this State." The case was tried upon the admissions in the pleadings and the stipulated facts. The trial court found that plaintiff's action was barred by the statute pleaded, that the money was owned by defendant and that it had been taken, detained, and deposited as alleged; concluded that cross-defendants' detention of the money became unlawful, and rendered judgment in favor of defendant on his cross-complaint.

On this appeal plaintiff contends (1) that this action is not governed by section 340 of the Code of Civil Procedure; and (2) that defendant cannot in any event recover on his cross-complaint, because his money had been put to an unlawful use. Neither contention can be sustained.

In amplification of its first point plaintiff asserts that the forfeiture provided for by section 325 of the Penal Code is a legislative or statutory forfeiture as distinguished from a common-law or judicial forfeiture and that the one-year statute (§ 340, Code Civ. Proc.) applies only to actions for the latter type. Actions of the type involved here, it is argued, are governed either by subdivision 1 of section 338 of the Code of Civil Procedure, applying to actions "upon a liability created by statute, other than a penalty or forfeiture," or by the four-year limitation declared by section 343 of the Code of Civil Procedure for actions not otherwise specifically limited.

Certainly the courts do recognize the two types of forfeitures mentioned. It was said in *People* v. *Broad*, (1932) 216 Cal. 1 [12 P. (2d) 941], at page 4, that "The distinction that exists between a common-law or judicial forfeiture and a legislative or statutory forfeiture is simply this: A common-

law or judicial forfeiture does not operate or take effect until by a proper judgment in a suit instituted for that purpose the rights of the state or government have been established. But in the case of a statutory or legislative forfeiture the forfeiture takes place on the commission of the offense. But after the commission of the offense resulting in the forfeiture the title of the state is inchoate or incomplete until such time as there is a judicial determination of the forfeiture. Neither the Legislature nor the courts can dispense with the constitutional requirement of a notice and hearing. (25 Cal. Jur. [*sic*: Corpus Juris] 1175, § 65 et seq.) *The only important difference between the two types of forfeiture* [italics added] is that in the case of the common-law or judicial forfeiture the rights of the state date from the judicial determination; while in the case of a legislative or statutory forfeiture the rights of the state, after such judicial determination, date back to the time of the offense, and cut off even the rights of a *bona fide* purchaser.'' It should also be noted that there is a further distinction in that actions for the *common-law* type of forfeiture are *in personam* for a money judgment against a defendant while suits upon a *legislative* forfeiture are *in rem,* not against the owner or possessor of the property, but against the property itself, which is treated as the real offender. In either event, however, *the primary object of the proceeding is to obtain judicial declaration of the forfeiture.* In the one case (common-law) it results in a money judgment against a defendant, while in the other (legislative) it results in a decree confirming title. In either case, however, judicial proceedings or the special statutory equivalent thereof are essential to provide the due process without which the original owner cannot be deprived of his property.

There is a pure legislative type of forfeiture in which the statute itself not only transfers title of the forfeited property but within itself prescribes the notice to be given the former owner and the procedural steps essential to constitute compliance with the due process clause of the Constitution. An example of such a legislative forfeiture is provided by Act 6288a, Deering's General Laws (1937), page 3004 (Stats. 1937, p. 169). This act sets up complete provisions for notice and procedure. No confirmatory action by the state is required but instead provision is made for an annulment suit within a limited period by persons whose lands have been improperly

forfeited. Obviously this type of legislative forfeiture is not pertinent to the proceedings before us. Other examples of legislative forfeitures are found in sections 11610 to 11629 of the Health and Safety Code and sections 49 to 52 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123; Act 3796, Deering's Gen. Laws (1937), p. 1719, at pp. 1755 to 1758).

An example of the common-law or judicial type of forfeiture is furnished by section 3867 of the Political Code which provides that ''Every county treasurer who neglects or refuses to . . . settle and make payment as required . . . [by law] shall forfeit to the state of California one thousand dollars, to be recovered in an action brought by the attorney general. . . .'' Another example is furnished by section 3870 of the Political Code: ''Every auditor who fails or refuses to make and transmit the report required . . . [by law] forfeits to the state of California one thousand dollars, to be recovered in an action brought by the attorney general. . . .'' Other examples are found in Political Code sections 3322, relating to auctioneers; 3694, relating to county auditors; 3656, dealing with assessors; 3697, concerning persons served with subpoenas; and 4113, relating to county treasurers. Section 1992 of the Code of Civil Procedure provides a similar type of forfeiture, as does section 5460 of the Health and Safety Code. In all of the common-law type examples mentioned action must be brought upon the statute *for* the forfeiture. Such actions (in cases where the penalty is to the state) clearly are governed by the limitation period prescribed in subdivision 2 of section 340 of the Code of Civil Procedure, applying to ''An action upon a statute . . . for a forfeiture or penalty to the people of this State.'' Plaintiff argues that the word ''forfeiture'' as used in the common-law type denotes practically the same meaning as ''penalty'' and asserts that the words ''forfeiture or penalty'' appearing in the limitation statute (Code Civ. Proc., § 340, subd. 2) are there used in their related or substantially synonymous sense rather than as implying distinctly different and unrelated meanings. They are used, it is contended, in the statute of limitation and in the common-law type of forfeiture statute in the sense of importing a requirement to pay the sum mentioned or as denoting the mulct, itself, and are not applicable to an action to confirm a legislative forfeiture. However, as is apparent from the examples thereof hereinabove cited, legislative for-

feitures differ in the proceedings required and the material question before us is whether the action contemplated by section 325 of the Penal Code is an action upon a statute for a forfeiture as that language is used in subdivision 2 of section 340 of the Code of Civil Procedure.

Where no *action* for a forfeiture is required to be brought, or where the statute itself prescribes the periods within which the procedural steps must be taken, certainly said section 340 of the Code of Civil Procedure would have no application, but let us now examine the provisions of section 325 of the Penal Code to ascertain exactly what procedure it contemplates. Its language is: "All moneys and property offered for sale or distribution in violation of any of the provisions of this chapter [chap. IX, tit. IX, pt. I] are forfeited to the state, and may be recovered by information filed, or by an* action brought by the attorney-general, or by any district attorney, in the name of the state. Upon the filing of the information or complaint, the clerk of the court, or if the suit be in a justice's court, the justice, must issue an attachment against the property mentioned in the complaint or information, which attachment has the same force and effect against such property, and is issued in the same manner as attachments issued from the district courts in civil cases."

Whether we regard that section as creating a legislative or a common-law type of forfeiture it is apparent at once that the declaration "All moneys . . . offered for . . . distribution in violation of any of the provisions of this chapter are forfeited to the state" is qualified by the ensuing clause "and *may be recovered* by information filed, or by an action brought by the attorney-general, or by any district attorney, in the name of the state." The same text cited by the Supreme Court in the Broad case, *supra*, states (25 C. J. 1176): "If the statute which provides for the forfeiture authorizes the proper officer to seize the thing named, or if a right to sue for the violation of the statute is given to anyone, title does not vest *ipso facto* by the prohibited act being done, but relates only to the time of seizure or to adjudging of the forfeiture in a suit begun. . . ." Supporting this statement, see *New York Fire Dept.* v. *Kip*, (1833) 10 Wend. (N. Y.) 266. The provision for filing of the information or bringing of the ac-

---

*The current edition of Deering's Code uses the word "any"; the original official code shows the word "an."

tion, which impliedly includes adoption of the general procedure for acquiring jurisdiction in such proceedings (*Niccoli* v. *McClelland,* (1937) 21 Cal. App. (2d) (Supp.) 759, 763 [65 P. (2d) 853]), together with the provision for issuance of an attachment against the property, is designed to provide the constitutional due process essential to accomplish and uphold the forfeiture. The jurisdictional and procedural step of bringing an action, by filing either an information or a complaint, upon which the attachment may issue and other appropriate proceedings be based, obviously is essential; the statute contains no other provision for notice to the defendant and without a due process requirement the statute itself would be void. In the absence of compliance with such process the defendant cannot be deprived of his property. In other words, regardless of whether the Legislature in section 325 may (or may not) have created a legislative type of forfeiture so far as concerns having the forfeited title relate back to the date of the unlawful act upon judicial ascertainment of the facts, it has incorporated into the statute not merely special statutory proceedings but the requirement of resort to an action of apparently a type contemplated by section 340 of the Code of Civil Procedure. ■ The mere fact that an action is *in rem* instead of *in personam* does not so change its character as to make a different statute of limitations applicable.

The state here has chosen to proceed by filing a complaint rather than an information. Whether that action be regarded as an ordinary civil action or as a special proceeding of a civil nature, its object obviously is the same: it seeks *recovery of a forfeiture.* Precisely, it seeks the "recovery" mentioned in section 325 of the Penal Code, by the procedure therein alluded to, of the forfeiture therein declared. Section 363 of the Code of Civil Procedure provides that "The word 'action' as used in this title is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature." A holding that section 325 of the Penal Code does not require the bringing of an action, or of a special proceeding of a civil nature, *for a forfeiture,* would be sheer fiat. For the commencement of such an action or proceeding the Legislature has prescribed a limitation of one year. We cannot indulge in judicial legislation to prescribe a longer period; we must conclude that the trial court was correct in holding that plaintiff's action was barred.

■ Plaintiff states its second point as follows: "Assuming

the applicable statutory limitation prevents an affirmative judgment for the state, may the court award the operator *and owner* of the machines *and coins* judgment for the return of the coins or their value?" (Italics added.) On the record as presented we find no tenable theory for answering that query other than in the affirmative.

Plaintiff asserts the well-known doctrine that "The Statute of Limitations is to be employed as a shield, and not as a sword; as a means of defense, and not as a weapon of attack." (*Grant* v. *Burr*, (1880) 54 Cal. 298, 300.) It argues further that by virtue of the statute and seizure of the money it succeeded to title to the money; that whether or not it brought any action to perfect its title is immaterial so far as defendant's right to recover is concerned; that its right to hold the money continues unabated as does the right of a mortgagee in possession, despite the barring by limitation of the right to foreclose his mortgage. As to the latter situation it is the law that "It can make no difference in so far as the right of the creditor to continue to hold the security is concerned, that the obligation on account of which he holds it is barred by the statute of limitations." (*Bridge* v. *Connecticut Mut. Life Ins. Co.*, (1914) 167 Cal. 774, 778 [141 Pac. 375].) Plaintiff further argues that defendant should have no affirmative judgment upon his cross-complaint because thereby he is given recovery "of the means and the fruit of his unlawful operation of the slot machines in violation of the Penal Code."

But the difficulty with all of these contentions is that they are based on unsound premises. Defendant in his cross-complaint is not using the statute of limitations as a sword or otherwise. When the trial court was ready to determine the cross-complaint the statute had already been used as a shield; the court had found that plaintiff's action for a forfeiture was barred. In the action it was plaintiff, not defendant, who sought to "recover" title to the money. Defendant's title, except as it was attacked on the theory of forfeiture, was not *questioned* at the trial; it is *assumed* here on appeal in plaintiff's formal statement of the question involved. Although neither the complaint itself nor the stipulation of facts specifically mentions the ownership of the money, as distinguished from the slot machines in which it was found, the case was tried on the theory that its ownership was admitted. In his opening statement the district attorney said: "We have set forth in our complaint the fact that there is on deposit . . .

the sum of $404.66; that this money was confiscated from slot machines . . . and that *the money* and machines *were then and there owned by the defendant,* Grant. The answer admits these allegations, so, as far as we are concerned, that is purely a legal argument.'' (Italics added.) Hence we have ownership in the defendant conceded except as he may have lost it by operation of the statute. But the statute cannot operate without due process of law and the only process provided is the bringing of the action with its ancillary (and perhaps jurisdictional) remedy of attachment. There was no taking of possession by plaintiff or its agents under a search warrant or by virtue of any authorization other than that provided by the statute. To hold that the statute divested defendant of his title or right of possession without compliance by plaintiff with the constitutional requirements of due process would be to give such statute unconstitutional power and effect. Since the plaintiff has not ''recovered'' the money, as that term is used in the statute (Pen. Code, § 325), and has lost all right to such recovery, the title and right to possession of such money remain in defendant free of any lien to the state.

The case is not similar to that where a mortgagee or pledgee has possession of property to secure a debt. The plaintiff itself has urged that this is a legislative or statutory forfeiture which affects the property directly rather than constituting any claim of personal debt against the defendant. There is no claim against the defendant *in personam;* he owes no money debt to the state. Either the precise property was itself forfeited or the state has no remedy in the premises against either the property or the defendant. Since the state has lost all right to forfeiture of the property it has no claim whatsoever against it and it never had a claim against the defendant personally. There is no debt for him to pay as a condition to becoming entitled to his money.

▇ The last phase of plaintiff's contention is likewise untenable. Defendant does not rely on any gambling enterprise to establish his ownership or right of possession. While it would seem an illogical inference to us to deduce that defendant had himself placed the coins in the slot machines, since obviously their very purpose is to procure coins from other persons, and although we recognize that if the money had been placed in the machines by patrons thereof defendant apparently would have to rely on the illegal operation of such

machines as a basis for acquiring title to the money, still we are precluded by the record from any inquiry along that line. In view of the opening statement of the district attorney, and the other circumstances shown, it is apparent that the entire trial proceeded on the understanding that the money at the time of its seizure belonged to defendant except as the state is contended to have acquired title by the alleged forfeiture. Furthermore, the presumption declared by subdivision 11 of section 1963 of the Code of Civil Procedure ''That things which a person possesses are owned by him,'' supports the finding of the trial court as to defendant's ownership of the money, independently of the statement of the district attorney. The defendant does not rely in this case upon the illegal enterprise. It is only the plaintiff which has sought to rely on that activity. The situation of the cross-defendants then certainly is no better than that of the bank which is spoken of in *Kyne* v. *Kyne,* (1940) 16 Cal. (2d) 436, 440 [106 P. (2d) 620]. The Supreme Court there said ''. . . a bank will not be permitted to invoke the illegality of a contract between two individuals and thereby retain money which was the fruit of the illegal transaction and which was deposited by one of them for the account of the other.''

The mere fact that money at some time subsequent to its mintage has been in a slot machine or a poker game does not render it permanently contraband so that the state may seize it wherever found. The plaintiff, having by its own neglect lost its right to have this money declared forfeited because of the particular usage shown, has no more right to it than to any other money which at some time has been so used. We view with disfavor the implication in the argument of plaintiff on this point to the effect that seizures of the type involved here should be upheld even in cases where the purpose of the state is to ignore the constitutional provisions for due process of law but nevertheless continue to hold the seized money in order to compel its claimant to resort to the courts and to produce legal proof of his title or right of possession as a condition to recovery. It would be unworthy of our democratic form of government for the state or a governmental agency or officer to seek to evade the constitutional process for the purpose of placing a citizen at a tactical disadvantage in the defense of his property rights, and the anomaly would be the more striking where the state sought

to justify its act upon the ground that the citizen was a gambler.

Inasmuch as an order denying a new trial in a civil action is not appealable, plaintiff's purported appeal therefrom is dismissed.

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1942.