**THE RITA MAERSK et al.**

**No. 963.**

District Court, D. Massachusetts.

Aug. 20, 1943.

Lord, Day & Lord, of New York City, and Putnam, Bell, Dutch & Santry and Charles F. Dutch, all of Boston, Mass., for libellant.

Bingham, Dana & Gould and Albert Gould, all of Boston, Mass., and Haight, Griffin, Deming & Gardner, of New York City, for Dampskibsselsk af 1912 A/S.

Fitz-Henry Smith, Jr., of Boston, Mass., for Sivewright, Bacon & Co. and Lambert Bros., Limited.

Edmund J. Brandon, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., for the United States.

HEALEY, District Judge.

This is a motion brought by the libellant for a final decree for $57,500 in accordance with a stipulation between counsel for libellant and counsel for the former owners of the "Rita Maersk".

On June 30, 1940, the libellant filed a libel against the Steamship "Rita Maersk", for breach of contract of carriage, seeking damages in the sum of $110,000.

On October 8, 1940, the owner, Dampskibsselsk af 1912 A/S, a Danish corporation, claimed the vessel and answered the libel.

About June 16, 1941, the United States, under authority of Section 1 of the Act of June 6, 1941, 55 Stat. 242, 46 U.S.C.A. note preceding section 1101, requisitioned and took title to the "Rita Maersk".

On January 31, 1942, the United States deposited with the Treasurer of the United States the sum of $200,000 on account of just compensation for the "Rita Maersk", and publication of such fact was made in the Federal Register on April 15, 1942.

Prior to the deposit of this sum, the libellant had filed a libel against the fund so deposited, which, on April 9, 1942, was dismissed because prematurely filed.

On April 13, 1942, the present amended libel against the fund was filed. To this libel, answers were filed by the Dampskibsselsk af 1912 A/S, by Lambert Brothers. Ltd., and Sivewright, Bacon and Co., both of whom have claims against the fund, and by the United States.

Only two other claims have been filed against the fund deposited, one by Sivewright, Bacon and Co., in the amount of $2,789.47, and the other by Lambert Brothers, Ltd. in the amount of $7,215.52.

By stipulation, dated April 6, 1943, between counsel for libellant and counsel for Dampskibsselsk af 1912 A/S, the claim of libellant was settled for the sum of $57,500 without interests or costs, and it was stipulated that a decree might be entered against the fund in that amount. The proposed decree is expressly made "subject to license under the Trading With the Enemy Act as amended, Executive Order 8389 as amended and applicable rules and regulations."

Counsel for Dampskibsselsk af 1912 A/S, counsel for Sivewright, Bacon and Co., and counsel for Lambert Brothers, Ltd., have all consented to the entry of the decree in question.

The only party objecting is the United States Government in its capacity as "stake-holder".

The Government's principal objections are two:.

1. The decree should not be entered until the expiration of six months after June 30, 1943.

2. Dampskibsselsk af 1912 A/S is an alien enemy within the meaning of the Trading with the Enemy Act.

The Act of June 6, 1941, 55 Stat. 242–245, by Section 1, after providing for the requisition of foreign merchant vessels lying idle within our waters, provided as follows: "*Provided,* That just compensation shall be determined and made to the owner or owners of any such vessel in accordance with the applicable provisions of section 902 of the Merchant Marine Act, 1936, as amended: *Provided* further, That such compensation hereunder shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, *subsisting* at the time of such requisition or taking of title or possession; the holder of any such claim may commence within six months after such deposit with the Treasurer and maintain in the United States District Court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisitioning or taking of title or possession, a suit in admiralty according to the principles of libels in rem against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties; and such suit shall be commenced in the manner provided by section 2 of the Suits in Admiralty Act and service of process shall be made in the manner therein provided by service upon the United States attorney and by mailing by registered mail to the Attorney General and the United States Maritime Commission and due notice shall under order of the court be given to all interested persons, and any decree shall be subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction."

By Public Law 17, entitled, "An Act To amend and clarify certain provisions of law relating to functions of the War Shipping Administration, and for other purposes", approved March 24, 1943, 57 Stat. 45, 50 U.S.C.A.Appendix § 1271, the second proviso of Section 1 of the Act of June 6, 1941, supra, was amended to read: "Sec. 3. (a) The second proviso of section 1 of the Act of June 6, 1941 (Public Law 101, Seventy-seventh Congress), as amended, is hereby amended to read as follows: '*Provided further,* That such compensation hereunder, or advances on account thereof, shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, *subsisting* at the time of such requisition or taking of title or possession; the holder of any such claim may commence prior to June 30, 1943, or within six months after the first such deposit with the Treasurer and publication of notice thereof in the Federal Register, whichever date is later, and maintain in the United States district court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisition or taking of title or possession, a suit in admiralty according to the principles of libels in rem against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties, and any decree in said suit shall be paid out of the first and all subsequent deposits of compensation; and such suit shall be commenced in the manner provided by section 2 of the Suits in Admiralty Act and service of process shall be made in the manner therein provided by service upon the United States attorney and by mailing by registered mail to the Attorney General and the United States Maritime Commission and due notice shall under order of the court be given to all interested persons, and any decree shall be subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction."

Thus, under the Amendment of March 24, 1943, the holder "of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel \* \* \*

may commence prior to June 30, 1943, or within six months after the first such deposit with the Treasurer and publication of notice thereof in the Federal Register, whichever date is later", and maintain a suit against the fund.

■ The first such deposit ($200,000) was made with the Treasurer of the United States on January 31, 1942, and publication in the Federal Register was made on April 15, 1942. The present libel was filed before June 30, 1943. By the express language of the amendment of 1943 (Public Law 17), the time for the filing of claims expired on June 30, 1943. The Amendment specifically provides that the holder of a claim may commence suit prior to June 30, 1943, or within six months after deposit and notice, whichever date is later. Here, June 30, 1943, is obviously the later date. The Amendment does not say six months after June 30, 1943. Consequently, I am of the opinion that the limitation period has expired, and that there is no merit to the Government's first objection.

The second objection of the Government is that the decree cannot be entered since Dampskibsselsk af 1912 A/S is an alien enemy.

■ The word "enemy" is defined by the Trading With the Enemy Act as: "(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory." 50 U.S.C.A.Appendix § 2(a).

Since Denmark is now occupied by armed forces of nations with which the United States is at war, it would seem clear that the Dampskibsselsk af 1912 A/S is an "enemy" within the meaning of that Act.

■ However, a suit may be brought in our courts against an alien enemy. Watts, Watts & Company v. Union Austriaca, 248 U.S. 9, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323.

But, the Government argues that in view of the decision in the Watts case, supra, consideration of this matter must or should be postponed until free intercourse with Denmark can be had. In the Watts case, the libellant, a British corporation, on August 24, 1914, while England was at war with Austria-Hungary, but while the United States was a neutral, brought a libel in personam against the respondent, an Austria-Hungary corporation, for coal sold respondent before the war. Jurisdiction was obtained by attachment of one of respondent's steamers. The District Court for the Eastern District of New York dismissed the libel without prejudice, on the ground that the law of both belligerent countries forbade the payment by a subject of one to its enemy. 224 F. 188. The Circuit Court of Appeals affirmed the District Court's decision on the ground that the District Court had discretion to decline jurisdiction. 2 Cir., 229 F. 136. The Supreme Court granted certiorari. By the time the case was heard in the Supreme Court, the United States was at war with Austria-Hungary. The Supreme Court reversed the holdings of both lower courts, but held that proceedings in the case should be postponed until after the war in order that respondent should be given adequate opportunity to defend. The Court said, at pages 21, 22 of 248 U. S., page 2 of 39 S.Ct., 63 L.Ed. 100, 3 A.L.R. 323:

"A suit may be brought in our courts against an alien enemy. * * * If the libel had been filed under existing circumstances, security for the claim being obtained by attachment, probably no American court would, in the exercise of discretion, dismiss it and thus deprive the libellant not only of its security, but perhaps of all possibility of ever obtaining satisfaction. Under existing circumstances dismissal of the libel is not consistent with the demands of justice.

"The respondent, although an alien enemy, is, of course, entitled to defend before a judgment should be entered. * * * It is now represented by counsel. But intercourse is prohibited by law between subjects of Austria-Hungary outside the United States and persons in the United States. * * * We cannot say that, for the proper conduct of the defense, consultation between client and counsel and intercourse between their respective countries may not be essential even at this stage. * * *"

■ That case, in my opinion, is distinguishable from the instant case. There the Supreme Court postponed the proceedings on the objection of the respondent. Here, Dampskibsselsk af 1912 A/S has not objected, but, on the contrary, has consented to the entry of the decree. It might also be pointed out that the Watts case was decided before the enactment of the Ship Requisition Act and the 1943 Amendment thereto. Because of these and other differences in the Watts case and the present case, I am of the opinion that the Watts case does not preclude the entry of the decree in question.

I am also of the opinion that no injustice to Dampskibsselsk af 1912 A/S would result from the entry of the decree.

The proposed decree is "subject to license under the Trading With the Enemy Act as amended [50 U.S.C.A.Appendix § 1 et seq.], Executive Order 8389 as amended [12 U.S.C.A. § 95 note], and applicable rules and regulations." Thus, the decree complies with the requirements of the Trading With the Enemy Act and the applicable executive orders and rulings of the Treasury Department.

No interests of the United States will be adversely affected by the entry of the proposed decree.

I conclude, therefore, that the libellant's motion for entry of the proposed decree should be granted.