250 P.2d 593]

[Sac. No. 6166.   In Bank.   Dec. 2, 1952.]

Estate of GERASIMOS CARAVAS, Deceased. SHELDON BRANDENBURGER, as Administrator, etc., Appellant, v. STATE OF CALIFORNIA, Respondent.

36

Brandenburger & White and William A. White for Appellant.

Harold I. Baynton, Assistant Attorney General, Frank J. Hennessy, United States Attorney, George B. Searls and Joseph Laufer, Attorneys, Department of Justice and Myron D. Alexander, Special Assistant to the Attorney General, as Amicus Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Gerasimos Caravas died intestate in San Francisco on September 30, 1941, and his estate was probated in the Superior Court of the City and County of San Francisco. No heirs appeared to claim the estate and on September 15, 1942, the court entered its decree ordering distribution of the estate to the State Treasurer pursuant to section 1027 of the Probate Code. In fact, however, Gerasimos was sur-

vived by his mother, Foteini Caravas, a resident and citizen of Greece and his sole heir under section 225 of the Probate Code. Foteini died in Greece in 1944. On August 25, 1947, petitioner, administrator of Foteini's estate, filed a petition in the Superior Court of Sacramento County praying that the State Treasurer be ordered to pay to petitioner the funds of the estate, amounting to $1,936.18. In explanation of the delay in filing the claim petitioner alleged, and the trial court found, that Greece was occupied by German military forces from April 7, 1941, to November 30, 1944, and that during this period it was impossible to file a claim for the funds held by the State Treasurer. The trial court also found that the reciprocity necessary under section 259 of the Probate Code existed. The court, however, entered judgment denying the claim, on the ground that it was barred by section 1026 of the Probate Code, providing: "A nonresident alien who becomes entitled to property by succession must appear and demand the property within five years from the time of succession; otherwise, his rights are barred and the property shall be disposed of as escheated property." Petitioner appeals from the judgment, contending that his claim was timely made on the ground that the period of German occupation of Greece should not have been included in the computation of the five-year period prescribed by section 1026.

When a nonresident alien succeeds to property, title vests in him at the death of the decedent (*Estate of Romaris*, 191 Cal. 740, 744 [218 P. 421]), subject to the control of the probate court and to the possession of the personal representative for purposes of administration. (Prob. Code, § 300.) If the nonresident alien should "appear and demand" the property within five years of his succession thereto, his right to the property is absolute; if he fails to meet that requirement, his right to the property is barred and the property is disposed of as escheated property. (*Lyons* v. *State*, 67 Cal. 380, 384 [7 P. 763]; *Estate of Meyer*, 107 Cal.App.2d 799, 804 [238 P.2d 597].) Section 1026 does not expressly provide how the alien must make his "demand," but the applicable procedure is found in other statutes. Under section 1027 of the Probate Code, estate assets not distributed by the final decree to known heirs, devisees, or legatees entitled thereto, are distributed to the State of California and are held by the State Treasurer. Thus, if as in the present case an alien has not made a "demand" under section 1026 at the time of the decree of distribution, the State Treasurer

takes possession of the property. ▆ When property is held under section 1027, claimants must appear and claim the estate or any part thereof in the Superior Court of Sacramento County. If the claim is not filed within the statutory period, it "shall be forever barred, and such property, or so much thereof as is not claimed shall vest absolutely in the State." Section 1027 further provides that "Rights of nonresident aliens shall be governed by the provisions of Section 1026."

▆ Since the sentence of section 1027 preceding the quoted reference to section 1026, provides that the five-year period under section 1027 commences from the date of the decree making distribution to the State Treasurer, the purpose of the reference to section 1026 is to call attention to the fact that when nonresident aliens succeed to the property, the five-year period is computed from the "time of succession" rather than from the date of distribution. ▆ When sections 1026 and 1027 are read together, it is clear that after the State Treasurer takes possession of assets of an estate pursuant to section 1027, a "demand" by a nonresident alien under section 1026 must be made in the Superior Court of Sacramento County in the same manner that a "claim" would be made for other assets held by the State Treasurer under section 1027, and that, after the distribution to the State Treasurer, the only difference between the two classes of property is that in the case of a nonresident alien the five-year period for making the claim is computed in a different manner. The attorney general contends that a "demand" under section 1026 may be made without any court action by the nonresident alien, even after the property has been distributed to the State Treasurer, relying upon a dictum in *State* v. *Smith,* 70 Cal. 153, 156 [12 P. 121]. In that case, however, the court was not concerned with express statutory language that after distribution to the State Treasurer a claim to the property could be made only in the Superior Court of Sacramento County.

The determinative question on this appeal is whether the five-year period set forth in section 1026 should be extended because of the disability suffered by petitioner.

▆ In the present case the nonresident alien was a citizen and resident of Greece during the period when the United States was at war with Germany. As a resident of an enemy-occupied country she came within the provisions of section two of the Trading With the Enemy Act. (50 U.S.C.A. Appendix, § 2; *Drewry* v. *Onassis,* 266 App.Div. 292 [42

N.Y.S.2d 74, 78], affirmed without opinion, 291 N.Y. 779 [53 N.E.2d 243] ; *The Rita Maersk,* 52 F.Supp. 56, 59, affirmed, 144 F.2d 921; *Compagnie Francaise De L'Afrique Occidentale* v. *The Otho,* 57 F.Supp. 829; 148 A.L.R. 1423.) She was thus unable to maintain a proceeding in a California court for the recovery of her property. (Trading With the Enemy Act, § 7; *Ex parte Colonna,* 314 U.S. 510, 511 [62 S.Ct. 373, 86 L.Ed. 379] ; *Meier* v. *Schmidt,* 150 Neb. 647, 648 [35 N.W.2d 500] ; 137 A.L.R. 1355.) Moreover, section 3 of the Trading With the Enemy Act prohibited residents of Greece from communicating with anyone in this country "except in the regular course of the mail" and during the German occupation mail service with Greece was suspended. (Postal Bulletin No. 18344, Nov. 28, 1941; Postal Bulletin No. 18773, Nov. 21, 1944.) It thus was impossible for Foteini Caravas or her heirs in Greece to communicate with persons in this country, or to file an action in a California court if communication could be had.

Petitioner contends that proceedings under sections 1026 and 1027 are subject to sections 354[1] and 356[2] of the Code of Civil Procedure. This contention must be sustained. ■ A "disability" under section 354 and a "statutory prohibition" under section 356 are both present since the Trading With the Enemy Act prevented petitioner from filing a claim to the property. ■ The word "action" in sections 354 and 356 includes a "special proceeding of a civil nature." (Code Civ. Proc., § 363.) ■ When a claim is filed in the Superior Court of Sacramento County pursuant to sections 1026 and 1027, the applicable procedure is that outlined in section 1272 and 1272a of the Code of Civil Procedure (*Ebert* v. *State,* 33 Cal.2d 502, 509 [202 P.2d 1022] ; see amendment to § 1027 by Stats. 1951, ch. 1459, § 1), and those sections are in part III of the Code of Civil Procedure, entitled "Special Proceedings of a Civil Nature." ■ It is thus clear that the act of filing a claim in the Superior Court of Sacramento County under sections 1026 and 1027 is the

---

[1]"When a person is, by reason of the existence of a state of war, under a disability to commence an action, the time of the continuance of such disability is not part of the period limited for the commencement of the action whether such cause of action shall have accrued prior to or during the period of such disability."

[2]"When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

"commencement of an action" within sections 354 and 356. (*Taketa* v. *State Board of Equalization,* 104 Cal.App.2d 455, 459 [231 P.2d 873] [mandate to set aside order revoking liquor license]; *People* v. *Grant,* 52 Cal.App.2d 794, 800 [127 P.2d 19] [proceeding under Pen. Code, § 325 to forfeit money taken from slot machines]; *Wells* v. *California Tomato Juice, Inc.,* 47 Cal.App.2d 634, 637 [118 P.2d 916] [proceeding to enforce mechanic's lien].)

Moreover, although sections 1026, 1027, 1272 and 1272a do not expressly refer to suspension of the limitation period when war has prevented access to the Superior Court of Sacramento County to file a claim, it is an established principle of international and municipal law that a statute of limitation is tolled during the period when the existence of a state of war prevents access to the courts, whether or not the particular statute of limitation expressly provides for such suspension thereof. (*Kolundjija* v. *Hanna Ore Mining Co.,* 155 Minn. 176, 179 [193 N.W. 163]; *Wirtele* v. *Grand Lodge, A.O.U.W.,* 111 Neb. 302, 305 [196 N.W. 510]; *Siplyak* v. *Davis,* 276 Pa. 49, 52 [119 A. 745]; *Inland Steel Co.* v. *Jelenovic,* 84 Ind.App. 373, 376 [150 N.E. 391]; 54 C.J.S., Limitation of Actions, § 259; 137 A.L.R. 1454.) "All statutes of limitation are based on the assumption that one with a good cause of action will not delay bringing it for an unreasonable length of time; but, when a plaintiff has been denied access to the courts, the basis of the assumption becomes destroyed." (*Frabutt* v. *New York, Chicago & St. Louis R. Co.,* 84 F.Supp. 460, 466.) A typical case is *Hanger* v. *Abbott,* 6 Wall. (U.S.) 532 [18 L.Ed. 939]. There, shortly after the Civil War a resident of New Hampshire brought an action in the federal court in Arkansas against a resident of Arkansas. The debt sued upon had been contracted before the war and the defendant pleaded the statute of limitations. The court held that since the courts of Arkansas were closed to a citizen of New Hampshire during the war, the statute of limitation was suspended for that period. The court recognized that the applicable statute of limitation did not expressly refer to war disabilities but held that nevertheless it must be interpreted to include such exception. Again, in *Peters* v. *McKay,* 195 Ore. 412 [238 P.2d 225, 246 P.2d 585], a case apposite to the present one, an Oregon statute provided that after property escheated to the state, it could be claimed within 10 years thereof. The statute did not provide for extension of the 10-year period if war prevented filing of a claim.

Residents of The Netherlands filed a claim after expiration of the statutory period, alleging as an excuse for the delay that the occupation of The Netherlands by Germany prevented timely compliance with the statute. The claimants' right was ultimately denied on grounds inapplicable here, but the Oregon court held that the period during which the claimants were denied access to the Oregon courts by reason of the war could not be included in the computation of the 10-year period. The court stated: "When the state consents to be sued, and then by reason of its recognition of rules of international and common law, closes its courts to the litigant, thereby denying the privilege which is granted, some construction must be sought which will avoid absurdity. It is unbelievable that the same hand which gives should also be construed to take away." (238 P.2d at 236.)

The attorney general contends that the foregoing cases should not be followed here, on the ground that section 1026 is a substantive statute of limitation and that at the expiration of five years the nonresident alien not only lost his remedy under sections 1272 and 1272a, but that in addition the right itself was extinguished under section 1026. As previously pointed out, under section 1026 title vests in a nonresident alien at the death of the decedent, subject to the condition that he must "appear and demand" the property within five years to prevent loss of his title. If he does not so appear his right to the property is lost; if he does appear his right is preserved. ▆ Thus, at least after a decree of distribution to the state has been entered under section 1027, the right of a nonresident alien is dependent upon the commencement of a legal proceeding within the five-year period, just as the recovery of an ordinary party plaintiff may be dependent upon the commencement of appropriate legal proceedings within the time specified by a statute of limitation. A contention similar to that made here by the attorney general was rejected in *State of Maryland* v. *United States*, 165 F.2d 869, 873, where the court stated: "And we think that it makes no difference that the limitation applicable to the action for death by wrongful act is held under state law to be a condition on the exercise of the right rather than a limitation on the remedy. This holding is based upon the narrow ground that the limitation is imposed by the statute creating the cause of action and is, to say the best of it, technical and legalistic reasoning, which is not followed in all the states." The same conclusion was reached in *Osbourne* v. *United States*, 164 F.

2d 767, 769, where a merchant seaman was unable to file an action within the time specified by a substantive statute of limitation because he was interned by the Japanese government and denied access to the courts during the time when the action should have been filed. (Accord: *Scarborough* v. *Atlantic Coast Line R. Co.*, 178 F.2d 253, 259, certiorari denied, 339 U.S. 919 [70 S.Ct. 621, 94 L.Ed. 1343] ; *Siplyak* v. *Davis*, *supra*, 276 Pa. 49, 58; see, also, *Farrell* v. *County of Placer*, 23 Cal.2d 624, 630 [145 P.2d 570, 153 A.L.R. 323].) Clearly, whether a particular statute of limitation is viewed as substantive or procedural, the consequences of a failure to commence legal proceedings within the specified time are the same insofar as the claimant is concerned and, accordingly, the same considerations that lead to the conclusion that a procedural statute is tolled by the fact that the claimant is denied access to the courts similarly lead to the conclusion that the time specified in a substantive statute of limitation must likewise be extended.

For the foregoing reasons, we have concluded that the trial court erroneously included the period between September 15, 1942, the date of distribution to the state, and November 30, 1944, the date of termination of German occupation of Greece, in its computation of the five-year period specified in section 1026. It is unnecessary to determine whether, as contended by petitioner, the period between the death of Gerasimos and the decree of distribution, or any part thereof, should also have been excluded. The periods between the death of decedent, September 30, 1941, and the decree of distribution, September 15, 1942, and between the date that occupation ended, November 30, 1944, and the date that the claim was filed, August 25, 1947, total less than five years.

When the operation of a statute of limitation is suspended for a given length of time, the effect is to add an equal period to the statutory period (*Graybar Electric Co.* v. *Lovinger*, 81 Cal.App.2d 936, 938 [185 P.2d 370]), and, under the views expressed herein, petitioner thus filed a claim within the five-year period prescribed by section 1026.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.