[Civ. No. 8094. Third Dist. Apr. 17, 1953.]

Estate of VITO MADIO SPINOSA, Deceased. FRANCESCO SPINOSA et al., Appellants, v. STATE OF CALIFORNIA, Respondent.

Sylvester Andriano and Louis Ferrari for Appellants.

Edmund G. Brown, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellants filed a petition in the Superior Court of Sacramento County, under sections 1272 and 1272a of the Code of Civil Procedure, to obtain money on deposit with the State Treasurer. Respondent, state of California, opposed said petition and after trial judgment was rendered against petitioners and this appeal is from said judgment.

The facts, as shown by the settled statement on appeal, are substantially as follows:

Vito Madio Spinosa died intestate in Oakland, California, on January 17, 1941. His heirs, the petitioners and appellants, are nonresident aliens, residing in Italy. Letters of administration were issued to the Public Administrator of Alameda County on February 7, 1941. On June 13, 1941, the appellants through their attorney filed the following "Notice of Appearance" in the probate proceedings: "To Albert E.

Hill, Public Administrator and Administrator of the Estate of Vito Madio Spinosa, . . . : You and Each of you please take notice and notice is hereby given that Francesco Spinosa, Lucia Perelli Spinosa and Antonia Fanelli Spinosa, brother and sisters of Vito Madio Spinosa, and sole heirs-at-law of his estate, hereby appear in the matter of the estate of said decedent and request that special notice be given them of all matters, steps and proceedings taken in the administration of said estate pursuant to section 1202 of the Probate Code of the State of California. Such notice to be sent to Sylvester Andriano, Attorney for said heirs, at 550 Montgomery Street, San Francisco, California.''

On August 15, 1941, the administrator filed a petition for distribution which contained the following: ''Your petitioner is informed and believes and therefore alleges that the following are the persons entitled to share in the distribution of this estate: Francesco Spinosa, brother, Lucia Perelli Spinosa, sister, Antonia Fanelli Spinosa, sister.'' On January 22, 1942, the probate court filed its decree entitled ''Decree of Settlement of Final Account and Order for Payment of Moneys into State Treasury'' This order recited: ''And it appearing that the affairs of said estate have been finally settled; that no heirs or other claimants thereof or thereto have appeared and established their rights; It is further ordered, adjudged and decreed that the County Treasurer of the County of Alameda, be and he is hereby directed to forthwith pay into the State Treasury all moneys in his hands belonging to said estate. . . .''

On June 22, 1948 this petition was filed in the Superior Court of Sacramento County to obtain money on deposit with the State Treasurer in the sum of $3,339.21.

The judgment against petitioners was based upon the following conclusions of law: ''That the decree of the probate court finding that no heirs had appeared and established their rights, was an adjudication that Francesco Spinosa, Lucia Perelli Spinosa and Antonia Fanelli Spinosa, were not the heirs of Vito Madio Spinosa and not entitled to share in the estate of Vito Madio Spinosa and that said decree of the probate court is res adjudicata as to the rights of Francesco Spinosa, Lucia Perelli Spinosa and Antonia Fanelli Spinosa to succeed to the estate of Vito Madio Spinosa. That the petition filed herein to recover the estate of Vito Madio Spinosa from the State Treasury was not filed within the time allowed by Probate Code section 1027; . . .''

Appellants first contend that the order of the probate court did not adjudicate the rights of petitioners, or vest any interest in the funds in the state of California. Appellants refer to the title of the decree which states: ''Order for Payment of Moneys into State Treasury.'' It is next argued that the words of the order, ''pay into'' do not denote a passage of title to the state. Appellants point out that under section 1147 of the Probate Code, the public administrator is required to deposit all funds with the county treasurer; that at the end of administration, the county treasurer, if the money is not distributed to known heirs, is authorized to deposit the same with the state. Appellants cite *Estate of Miner,* 143 Cal. 194 [76 P. 968], for the proposition that the words ''pay into'' do not vest any interest in the state. In that case the decree recited: ''The affairs of the Estate of James Miner, deceased, having been fully settled, and there being no heirs or other claimants thereof, it is ordered, that the county treasurer of this city and county forthwith pay into the State Treasury all moneys and effects in his hands belonging to said estate.'' It was held that: ''After hearing further argument, and a re-examination of the case, we have arrived at the conclusion that the final order of the probate court did not operate to vest title to the fund so deposited in the state treasury of the state, as upon a decree in an action brought to escheat the same.''

Respondent in arguing that the decree of the probate court is res judicata points out that petitioners appeared in the probate proceedings; that the petition for distribution named the petitioners as heirs; and that, however, the court found that no heirs had appeared and established their claim. Respondent concludes that this finding is an adjudication that the petitioners were not entitled to share in the estate. In arguing that the decree of the probate court was a decree of distribution it is stated that the court had before it ''a petition for distribution,'' and having found that heirs had not proved their claim, ordered the estate paid to the state.

The general rule as to the doctrine of res judicata is well expressed in 30 American Jurisprudence, sections 161 and 162, pages 908, 909:

''Briefly stated, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other

judicial tribunal of concurrent jurisdiction. To adopt the language of the English court in announcing the doctrine in an early case, which has been frequently repeated by the courts, the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court. In speaking of this rule and the distinctions which appear therein, it has been said that this brief but comprehensive summary furnishes a rule for every case that any complication of circumstances can produce. On the other hand, it has been declared that when a case lies hard by the line of cleavage between what is and what is not res judicata, it may be a nice question to determine on which side of the line the case falls.''

''The doctrine of res judicata is a principle of universal jurisprudence, forming a part of the legal systems of all civilized nations. It is not, however, to be applied so rigidly as to defeat the ends of justice; there are exceptions to it based upon important reasons of policy. There is also support for the rule that judgments relied upon as creating an estoppel are to be construed with strictness.''

And in *Guardianship of Di Carlo,* 3 Cal.2d 225, the court said at page 234 [44 P.2d 562, 99 A.L.R. 990] :

''It may be conceded that the proceeding by the guardian has the character of a probate proceeding and is *in rem.* (*Smith* v. *Fidelity & Deposit Co.,* 130 Cal.App. 45 [19 P.2d 1018].) But we do not agree that this designation necessarily compels the holding that an intermediate account of a guardian is conclusive against the ward. The legislature has expressly made it so in the case of executors, administrators, and testamentary trustees. (Prob. Code, secs. 931, 1123.) The absence of such declaration in the case of guardians leaves the matter open to the courts to determine the proper rule. There is no doubt some force in the analogy of the estate and trustee cases. Nevertheless, they are distinguishable in one important respect, namely, that the ward is a person under legal disability and ordinarily unable to protect himself against overreaching or other improper conduct of the guardian. This distinction is sufficient to justify an exception to the normal application of the principle of *res judicata.* That principle is not to be applied so rigidly as to defeat the ends of justice; there are exceptions to it, based upon important reasons of policy, and we think that this case calls for such an exception.''

■ We are unable to agree with respondent's contention that the "Decree of Settlement of Final Account and Order for Payment of Moneys into State Treasury," filed by the probate court on January 22, 1942, was res judicata upon the question that appellants were not the heirs of Vito Madio Spinosa. The exact language in the order was "That no heirs or other claimants thereof or thereto have appeared and established their rights." This language must be considered in the light of, and in connection with, the circumstances as they existed at that time. The administrator had on August 18, 1941, filed a petition for distribution in which he alleged that appellants were the persons entitled to share in the distribution of the estate. This petition was not heard until January 22, 1942. ■ In the meantime, on December 11, 1941, the United States declared war upon Italy (Joint Res. Dec. 11, 1941, c. 565, 55 Stat. 797). Of this we can take judicial notice. (Code Civ. Proc., § 1875, subds. 2, 3; 10 Cal. Jur., Evidence, § 27, p. 699.) ■ Upon this declaration being made, appellants, all residents and citizens of Italy, became enemy aliens and as such were prohibited from prosecuting or maintaining any suit in law or in equity in any court in the United States prior to the end of the war. (50 U.S.C.A. App., § 7b; 56 Am.Jur., War, § 131, p. 240.) Under such circumstances, appellants, being enemy aliens, could not appear and establish their rights and no distribution could be made to them. Under such circumstances the probate court could only find that no heirs had appeared and established their rights and order the county treasurer to pay the moneys on hand belonging to said estate into the state treasury. We do not believe that the language "no heirs or other claimants have appeared and established their rights" can be held to be an adjudication that appellants were not the heirs of Vito Madio Spinosa, when the petition for distribution filed by the administrator stated that they were the heirs. If the court had intended to determine that appellants were not the heirs of deceased, it could and would have said so in direct language, but it could hardly so determine because there was and is no dispute as to the fact that they were the heirs. However, because of the state of war between the United States and Italy, it could not declare that appellants had, or had established any rights.

■ Before we would be justified in agreeing with respondent's contention that the order of January 22, 1942, ·

was res judicata that appellants were not the heirs, we would have to give to the language of the order a strained construction, and where, as here, such a construction would manifestly defeat the just claims of appellants, the doctrine of res judicata should not be "applied so rigidly as to defeat the ends of justice." As hereinbefore pointed out, such a construction is neither necessary nor reasonable.

Respondent contends further that even if the order of the probate court of January 22, 1942, was not a final determination that appellants were not the heirs of deceased, they are still not entitled to recover the funds of said estate because their petition was not filed within the time allowed by Probate Code, section 1027. One of the conclusions of law of the trial court was in accordance with this contention.

In the very recent case of *Estate of Caravas,* 40 Cal.2d 33 [250 P.2d 593], decided since the trial of the instant case, the court said at page 38:

". . . When property is held under section 1027, claimants must appear and claim the estate or any part thereof in the Superior Court of Sacramento County. If the claim is not filed within the statutory period, it 'shall be forever barred, and such property, or so much thereof as is not claimed shall vest absolutely in the State.' Section 1027 further provides that 'Rights of nonresident aliens shall be governed by the provisions of Section 1026.' Since the sentence of section 1027 preceding the quoted reference to section 1026, provides that the five-year period under section 1027 commences from the date of the decree making distribution to the State Treasurer, the purpose of the reference to section 1026 is to call attention to the fact that when nonresident aliens succeed to the property, the five-year period is computed from the 'time of succession' rather than from the date of distribution. When sections 1026 and 1027 are read together, it is clear that after the State Treasurer takes possession of assets of an estate pursuant to section 1027, a 'demand' by a nonresident alien under section 1026 must be made in the Superior Court of Sacramento County in the same manner that a 'claim' would be made for other assets held by the State Treasurer under section 1027, and that, after the distribution to the State Treasurer, the only difference between the two classes of property is that in the case of a nonresident alien the five-year period for making the claim is computed in a different manner."

Section 354 of the Code of Civil Procedure provides:

"When a person is, by reason of the existence of a state of war, under a disability to commence an action, the time of the continuance of such disability is not part of the period limited for the commencement of the action whether such cause of action shall have accrued prior to or during the period of such disability."

In dealing with a similar contention in *Estate of Caravas, supra,* our Supreme Court said at page 39:

"Petitioner contends that proceedings under sections 1026 and 1027 are subject to sections 354 and 356 of the Code of Civil Procedure. This contention must be sustained. A 'disability' under section 354 and a 'statutory prohibition' under section 356 are both present since the Trading With the Enemy Act prevented petitioner from filing a claim to the property. The word 'action' in sections 354 and 356 includes a 'special proceeding of a civil nature.' (Code Civ. Proc., § 363.) When a claim is filed in the Superior Court of Sacramento County pursuant to sections 1026 and 1027, the applicable procedure is that outlined in section 1272 and 1272a of the Code of Civil Procedure (*Ebert* v. *State,* 33 Cal.2d 502, 509 [202 P.2d 1022]; see amendment to § 1027 by Stats. 1951, ch. 1459, § 1), and those sections are in part III of the Code of Civil Procedure, entitled 'Special Proceedings of a Civil Nature.' It is thus clear that the act of filing a claim in the Superior Court of Sacramento County under sections 1026 and 1027 is the 'commencement of an action' within sections 354 and 356. (*Taketa* v. *State Board of Equalization,* 104 Cal. App.2d 455, 459 [231 P.2d 873] [mandate to set aside order revoking liquor license]; *People* v. *Grant,* 52 Cal.App.2d 794, 800 [127 P.2d 19] [proceeding under Pen. Code, § 325 to forfeit money taken from slot machines]; *Wells* v. *California Tomato Juice, Inc.,* 47 Cal.App.2d 634 [118 P.2d 916] [proceeding to enforce mechanic's lien].)

"Moreover, although sections 1026, 1027, 1272 and 1272a do not expressly refer to suspension of the limitation period when war has prevented access to the Superior Court of Sacramento County to file a claim, it is an established principle of international and municipal law that a statute of limitation is tolled during the period when the existence of a state of war prevents access to the courts, whether or not the particular statute of limitation expressly provides for such suspension thereof. (*Kolundjija* v. *Hanna Ore Mining Co.,* 155 Minn. 176, 179 [193 N.W. 163]; *Wirtele* v. *Grand Lodge, A.O.U.W.,*

111 Neb. 302, 305 [196 N.W. 510] ; *Siplyak* v. *Davis,* 276 Pa. 49, 52 [119 A. 745] ; *Inland Steel Co.* v. *Jelenovic,* 84 Ind.App. 373, 376 [150 N.E. 391] ; 54 C.J.S., Limitation of Actions, § 259 ; 137 A.L.R. 1454.)''

It is conceded by respondent that if the time of the duration of the war is no part of the statute of limitation, then the petition of appellants to obtain the moneys of Vita Spinosa on deposit with the State Treasurer was filed within the period of time allowed by said Probate Code sections 1026 and 1027.

We conclude, therefore, that the trial court erred in determining that the order of the Probate Court of Alameda County was res judicata that appellants were not the heirs of Vito Madio Spinosa, and also that the court erred in determining that the petition of appellants to recover the fund of the estate of said decedent from the state treasury was not filed within the time allowed by the Probate Code.

As stated in 10 California Jurisprudence, Escheat, section 2, page 568:

''Escheats and forfeitures are not favored and unless there is an express provision therefor the right of the state to have property escheated to it does not exist.''

The escheat statutes contemplate that where a person dies without heirs, or without known heirs who fail to file their claim to the estate within the time set forth in the statutes, the property will be escheated. In the instant case appellants are without question the rightful heirs and have filed their petition in the Superior Court of Sacramento County within the time required. To hold that they were barred by the prior probate proceedings under circumstances as extraordinary as the ones present in the instant proceeding would be to defeat the very spirit of the law relating to escheat and succession.

No other points raised require discussion.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 11, 1953.